UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESSICA KEENE,

       Plaintiff,

v.                                                      Case No. 8:18-cv-261-T-CPT

NANCY A. BERRYHILL,
Deputy Commissioner for Operations,
performing the duties and functions
not reserved to the Commissioner of
Social Security,

       Defendant.
_____/

**ORDER**

The Plaintiff seeks judicial review of the Commissioner's denial of her claim for Disability Insurance Benefits (DIB). For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1980, completed one year of college and training for medical certifications, and has past relevant work experience as a waitress, retail sales clerk, certified nurse assistant (CNA), and licensed practical nurse (LPN). (R. 20, 35, 48, 344, 413). In brief, the Plaintiff collapsed in 2008, fractured her spine, and underwent a lumbar (lower) spinal fusion for the fracture and for spondylolisthesis

(overlap of one spinal vertebra with another). (R. 13, 160). The procedure improved her condition until she fell again in May 2010, when her pain returned. (R. 13, 160, 526).

In September 2010, the Plaintiff applied for DIB, alleging disability as of August 15, 2010, due to depression, multilevel degenerative disc disease, and a syrinx in her thoracic spine. (R. 412). The Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration. (R. 10). After an Administrative Law Judge (ALJ) affirmed the denial in July 2013, the Appeals Council remanded the matter, in part, because the ALJ failed to consider the opinion of the Plaintiff's treating neurosurgeon, Donald Sachs, M.D. (R. 10, 134-43, 151-52).

As the first ALJ had retired by then, the matter was heard by a second ALJ, who issued an independent denial in May 2015, finding that the Plaintiff was capable of a wide range of light work. (R. 10, 157-68). The Appeals Council again remanded the matter, concluding, in relevant part, that the ALJ's decision did not adequately evaluate the physical function opinions of a consultative examining physician, Paul Taylor, M.D., and the Plaintiff's treating neurologist, Thomas DiGeronimo, M.D.[1] (R. 10, 176-78).

---

[1] Citing Dr. Taylor's functional assessment/medical source treatment (R. 708-11) and Dr. DiGeronimo's Physical Capacity Form (R. 783-87), the Appeals Council directed the ALJ to "[g]ive further consideration to the treating and nontreating source opinions pursuant to the provisions of 20 CFR 404.1527 and Social Security Rulings 96-2p and 96-5p, and [to] explain the weight given to such opinion evidence." (R. 176-77).

On the second remand, the ALJ sent the Plaintiff for another physical consultative examination (CE) "[i]n order to address the Council concerns and because of the variable prior findings." (R. 18). That second CE was conducted by Bhupendra Gupta, M.D., on October 10, 2016. (R. 18, 1302-16).

At the Plaintiff's request, the ALJ subsequently conducted a third hearing on the matter on December 13, 2016. (R. 31-52). The Plaintiff was represented by counsel at that hearing and testified on her own behalf. *Id.* A vocational expert (VE) also testified. *Id.*

In a decision dated March 29, 2017, the ALJ found that the Plaintiff: (1) met the insured status requirements through December 31, 2015, and had not engaged in substantial gainful activity since her alleged onset date of August 15, 2010; (2) had the severe impairments of "Degenerative Disc Disease (DDD) of the Spine and Anxiety Depression;" (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments; (4) had the residual functional capacity (RFC) to perform light work, subject to certain functional limitations; and (5) based in part on the VE's testimony, could not perform her past relevant work but was capable of performing jobs that exist in significant numbers in the national economy. (R. 12-21). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 21).

The Appeals Council denied the Plaintiff's request for review. (R. 1-6). Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).[2] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (citing 20 C.F.R. § 404.1520(a)(4)).[3] Under this process, an ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to perform past relevant work; and (5) can perform other work in the national economy given his or her RFC, age, education, and work experience. *Id*. (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). While the claimant has the burden of proof

---

[2] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.
[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

through step four, the burden temporarily shifts to the Commissioner at step five. *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove that she cannot perform the work identified by the Commissioner. *Id*. In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A Social Security claimant who does not prevail at the administrative level may seek judicial review in federal court provided that the Commissioner has issued a final decision on the matter after a hearing. *See* 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *See id.*; *Hargress v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (citation omitted). Although no deference is given to the Commissioner's legal conclusions, her findings of fact "are conclusive if they are supported by 'substantial evidence.'" *Doughty*, 245 F.3d at 1278 (citation omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Hargress*, 883 F.3d at 1305 n.2 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).

In evaluating whether substantial evidence supports the Commissioner's decision, the Court "may not decide the facts anew, make credibility determinations,

or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). Indeed, it is the province of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).[4] Thus, the Court's role is confined to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Moore*, 405 F.3d at 1211. Where this quantum of evidence exists, the Court must affirm the Commissioner "even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Philips*, 357 F.3d at 1240 n.8).

III.

The Plaintiff asserts three arguments on appeal: (1) the ALJ impermissibly substituted his opinion for that of the Plaintiff's doctors regarding the cause of the Plaintiff's pain; (2) the ALJ wrongfully determined that the Plaintiff had not yet actually undergone pain management; and (3) the ALJ failed to properly evaluate the opinions of the Plaintiff's treating and consulting physicians. (Doc. 17). In response, the Commissioner asserts that the ALJ's decision is in accordance with the applicable legal standards and is supported by substantial evidence. (Doc. 19). After a thorough review of the record and the parties' submissions, the Court concludes that the Plaintiff's claims of error are without merit.

---

[4] Decisions of the former Fifth Circuit issued prior to October 1, 1981, bind this Court. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981).

A.

In determining the Plaintiff's RFC, the ALJ's findings included the following:

> The claimant's primary impediment remained her spine through the close of 2015. The ALJ thus accepts that she might fall due to instability if at unprotected heights, as the first CE and Dr. DiGeronimo noted. The undersigned nevertheless does not find that the residual anterolisthesis (forward overlap) and other abnormalities were sufficient to prevent the "light" duty that Dr. Gupta subsequently allowed. She underwent rapid bone grafting after initial injury before [the alleged onset date], and was better until the second incident. While she still had the overlap, the radiologists read the studies as showing just grade 1-2 level anomaly. There was no gross degenerative disc disease or further canal involvement. *With only one operation, there is no failed back syndrome from repeat procedure scarring.* The upper body involvement was minimal, without stenosis, so arm functions (lifting/carrying twenty pounds on occasion, reaching, manipulating) should not have been impeded on the basis of any mid-upper spinal component. There is no separate trouble with the extremities to prevent operating pedals and levers.

(R. 16) (emphasis added; citations to hearing exhibits omitted).

The Plaintiff takes issue with that portion of the above passage where the ALJ opines that, "[w]ith only one operation, there is no failed back syndrome from repeat procedure scarring." (R. 16). Specifically, the Plaintiff argues that failed back syndrome (or failed back surgery syndrome or post laminectomy syndrome, as it is sometimes known)[5] can result from only one surgery, and that the Plaintiff was diagnosed with such a condition by Drs. Mohammad Eldeeb,[6] DiGeronimo, and

---

[5] According to the article from the Journal of Pain Research attached to the Plaintiff's submission, failed back surgery syndrome is defined as "[l]umbar spinal pain of unknown origin persisting despite surgical intervention or appearing after surgical intervention for spinal pain originally in the same topographical location." (Doc. 17-1 at 1).

[6] Dr. Eldeeb is a pain management physician who treated the Plaintiff in 2010.

7

Taylor. (Doc. 17 at 18-20). The Plaintiff further contends that the ALJ's rejection of this diagnosis as a cause of her pain is not supported by the evidence of record and amounts to the ALJ substituting his opinion for that of the medical experts. *Id.* The Commissioner counters that the Plaintiff has failed to show that her failed back syndrome caused additional limitations or that the ALJ's determination regarding this condition prejudiced her in any way. (Doc. 19 at 4-6). The Court agrees with the Commissioner.

While Drs. Eldeeb, DiGeronimo, and Taylor noted diagnoses of post laminectomy syndrome (i.e., failed back surgery) or postop low back, the mere existence of these diagnoses does not establish work-related limitations or undermine the ALJ's determination in that regard. Instead, the Plaintiff "must show the effect of the [claimed] impairment on her ability to work." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005); *see also Carter v. Comm'r of Soc. Sec.*, 411 F. App'x 295, 299 (11th Cir. 2011) (examining physician's opinion entitled to little weight because diagnosis of impairment omitted discussion of why condition made it impossible for claimant to be gainfully employed or nature or permanence of limitations); *Moore*, 405 F.3d at 1213 n.6 ("the mere existence of . . . impairments does not reveal the extent to which they limit [a claimant's] ability to work") (citation omitted); *Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) (same). The Plaintiff has not done so here. *See* 20 C.F.R. § 404.1512(a); *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 859 (11th Cir. 2013) (noting claimant failed to show what additional limitations her condition caused beyond limitations manifested by her other severe impairments).

The Plaintiff has similarly failed to show that there is insufficient support for the ALJ's rejection of the failed back surgery diagnosis as a cause of her pain. Nor could she. As evidenced by the ALJ's decision, the ALJ considered and discussed the Plaintiff's complaints of back pain, other symptoms attributable to her impairments of the spine, and the extent to which those impairments limited her ability to work. The ALJ opined that, "[i]n terms of the claimant's alleged backache, her allegations [we]re reasonably consistent with the evidence to the extent that she did need the major procedure for her broken back, and still ha[d] the overlap." (R. 17). The ALJ stated that he took these assertions into account and found her contentions to be partially consistent with other evidence. *Id.*

The ALJ went on to find, however, that various inconsistencies in the record did not support the degree of residual pain alleged by the Plaintiff. *Id*. These inconsistencies included the fact that her treating physician, Dr. DiGeronimo, could not account for the Plaintiff's pain,[7] and that the Plaintiff's claims of shooting arm pain brought on by sitting were not only difficult to explain, but were incompatible with the primary involvement in the low back. (R. 17, 19). The ALJ also observed that, "[e]xcept for the residual overlap, there were few other findings independent of [the

---

[7] *See, e.g.,* Dr. DiGeronimo's notes from a November 14, 2013, office visit, reporting, in pertinent part: "In 2010 fell and states fractured lumbar fusion site and developed syrinx. However MRI we did didn't show any issues." (R. 1221); and Dr. DiGeronimo's notes from a December 17, 2014, office visit, stating, in relevant part, that, while the Plaintiff had some mild bulging at numerous levels (which was normal aging and normal responses to someone who has had surgery), there was no reason for pain or any pathology and that, despite complaints of some anterior pain in her thighs and legs, there was no evidence of a nerve root or foraminal problem in the upper L4 L3 RL 2 levels (R. 1776).

Plaintiff's] control or self statement, such as repeated spasm and reflex deficits. (Spasm was present in the first CE, but not the latest)." (R. 17). In addition, the ALJ noted, among other factors, that the Plaintiff still drove, had not yet undergone pain management,[8] quit physical therapy in 2011, and stopped using Dr. DiGeronimo's practice more recently. *Id*.

Moreover, even if the ALJ erred in his determination that the Plaintiff did not have failed back syndrome, any such error was harmless. The Plaintiff has now shown in this regard how this condition caused additional limitations beyond those manifested by her other back or spine impairments or how the existence of this condition impacted her RFC. *Sanchez*, 507 F. App'x at 859. Absent such a showing, there is no cause for remand based on the claimed error. *See Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) ("When . . . an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.").

The Plaintiff's remaining contention that the ALJ substituted his opinion for that of the doctors is also without merit. The ALJ simply performed his duty of weighing all of the evidence of record and resolving the inconsistencies he discerned in the record. *See* 20 C.F.R. §§ 404.1520b, 404.1527, 404.1545, 404.1546(c).

---

[8] The Plaintiff's argument that the ALJ erred in making this finding regarding pain management is discussed and rejected in Section B, *infra*.

10

B.

Citing her 2010 visit to Dr. Eldeeb, a pain management physician, the Plaintiff next argues that the ALJ's finding that she had not yet actually undergone pain management is not supported by substantial evidence. (Doc. 17 at 20-21). This argument also fails.

While the record indicates that the Plaintiff did see Dr. Eldeeb for an initial evaluation, was sent for testing, and did receive lumbar branch block injections, she stopped seeing Dr. Eldeeb shortly after she applied for disability more than six years before the ALJ's decision. (R. 606-36). Thus, the ALJ's statement that the Plaintiff "ha[d] not yet actually undergone pain management" appears to be intended as a general basis for discounting the Plaintiff's pain allegations and alludes to the Plaintiff's failure over a lengthy period of time to undergo any sustained and meaningful pain management, despite her treating physician's recommendation that she do so. (R. 17).

The Plaintiff's attempts to characterize the treatment she received from Drs. DiGeronimo and Sachs as "pain management" are unpersuasive. While both of these physicians tried to help the Plaintiff manage her pain, neither of them was a pain management doctor, as even the Plaintiff candidly acknowledges. (Doc. 17 at 21) (conceding that Dr. Geronimo "technically is not a pain management doctor").

Indeed, Dr. DiGeronimo actually referred the Plaintiff to a pain management physician on at least two occasions. (R. 736, 1176).[9]

In sum, the ALJ's statement that the Plaintiff had not undergone pain management is sufficiently supported by the record. Even were it not, the Plaintiff has failed to establish that this finding prejudiced her in any way, as it was just one of several reasons given by the ALJ for discounting the Plaintiff's allegations of pain. As such, to the extent the ALJ erred, any such error was harmless.

C.

The Court is similarly unpersuaded by the Plaintiff's assertion that the ALJ improperly evaluated the opinions of the treating and consulting physicians, Drs. DiGeronimo, Taylor, and Sachs. The Plaintiff contends in this regard that the ALJ failed to give Dr. DiGeronimo's opinion the controlling weight to which it was entitled under the law, particularly since it was supported by all of the other treating and examining sources, with the exception of Dr. Gupta, and was internally consistent with Dr. DiGeronimo's own records. (Doc. 17 at 21-22). The Plaintiff also asserts that Drs. Taylor and Sachs's opinions should have been given more weight as well. *Id.*

In evaluating an individual's disability claim, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence."

---

[9] Notably, on one of those occasions, Dr. DiGeronimo's referral notes indicate that the Plaintiff was advised to see a pain specialist to determine whether the pain medications she was taking were appropriate, that she was made aware that she could not come back to Dr. DiGeronimo's office until that evaluation was made, and that Dr. DiGeronimo would determine at that time whether he wished to continue with her care. (R. 1176).

*McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (citing 20 C.F.R. § 404.1527(b)).[10] "'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite [her] impairment(s), and [the claimant's] physical or mental restrictions.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (quoting 20 C.F.R. § 404.1527(a)(2)). If a doctor's statement rises to the level of a "medical opinion," an ALJ must state with particularity the weight given to that opinion and the reasons therefor. *Id.* at 1179. In rendering this determination, the ALJ must consider: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of the doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; and (5) the doctor's area of specialization. 20 C.F.R. § 404.1527(c). While the ALJ is required to consider each of these factors, it is not mandatory that he explicitly address them in his decision. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011).

---

[10] Although this regulation has been amended effective March 27, 2017, the new regulation only applies to applications filed on or after that date. *See* 20 C.F.R. § 404.1520c. Because the Plaintiff's application was filed in September 2010, the older version of the regulation applies here.

13

The Regulations set forth three tiers of sources for medical opinions: (1) treating physicians; (2) non-treating, examining physicians; and (3) non-treating, non-examining physicians. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (citing 20 C.F.R. § 404.1527(a)(2), (c)(1)-(2)).

Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford*, 363 F.3d at 1159. Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *See* 20 C.F.R. § 404.1527(c); *Phillips*, 357 F.3d at 1240-41; *Crawford*, 363 F.3d at 1159. In addition, this Circuit has held that a treating physician's opinion is not entitled to great weight if evidence of a claimant's daily activities contradicts the opinion. *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873 (11th Cir. 2011) (citing *Phillips*, 357 F.3d at 1241).

While an ALJ must usually give substantial or considerable weight to a treating physician's opinion, the opinion of a one-time examining doctor—such as a doctor who performs a CE—merits no such deference. *Crawford*, 363 F.3d at 1160 (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)). An examining doctor's opinion, however, is usually accorded greater weight than that of a non-examining physician. *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th Cir. 2017) (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).

Besides the nature of a physician's relationship with a claimant, the weight of the evidence relied upon by the physician in developing his opinion is also relevant to the weight to be afforded that opinion. Thus, the more a medical source presents evidence to support his opinion, such as medical signs and laboratory findings, the more deference is given to that medical opinion. 20 C.F.R. § 404.1527(c)(3). Similarly, the more consistent the medical opinion is with the record as a whole, the more weight it is entitled to as well. 20 C.F.R. § 404.1527(c)(4).

In the end, irrespective of the nature of a physician's relationship with a claimant, an ALJ "is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." *Huntley*, 683 F. App'x at 832 (citing *Sryock,* 764 F.2d at 835) (emphasis in original); *accord Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) ("Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding.").

With respect to a claimant's RFC, a physician's opinion as to what a claimant can do despite her impairments does not necessarily dictate the RFC determination. *See* 20 C.F.R. §§ 416.945, 416.946; SSR 96-5p, 1996 WL 374183 (S.S.A. July 2, 1996). As SSR 96-5p explains:

> Even though the adjudicator's RFC assessment may adopt the opinions in a medical source statement, they are not the same thing: A medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s).

* * *

> Although an adjudicator may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the RFC assessment.

1996 WL 374183, at *4-5.

As a result, the opinion of a single physician is not determinative of the claimant's RFC. *See id.*; *see also Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."). Indeed, as long as an ALJ's assessment of a claimant's RFC is supported by substantial evidence, that assessment is "within the province of the ALJ, not a doctor." *Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010).

Here, the ALJ gave limited weight to Dr. DiGeronimo's opinion because there were "discrepancies" both within the opinion itself "and with the rest of the file." (R. 19). This finding was adequately supported in the ALJ's decision. *Id*.

The ALJ noted in this regard that Dr. DiGeronimo failed to explain his finding of impermissible activities involving only arms and legs (and not spine), such as pushing, pulling, reaching, and kneeling, despite the Plaintiff's limbs being normal, while seemingly contradictorily allowing bending, which involves the spinal joints. *Id*. The ALJ also found Dr. DiGeronimo's suggested use of a cane incompatible with Dr. Taylor's lack of such a suggestion, even in light of a noted limp. *Id.* Finally, the ALJ

pointed out that Dr. DiGeronimo "could not fully account for the pain complaints in more recent reports." (R. 17, 19); *see supra* n.7.

In addition, the ALJ identified evidence in the record, which conflicted with Dr. DiGeronimo's opinion. As discussed above, this included the fact that the Plaintiff's claims of shooting arm pains brought on by sitting were difficult to explain and incompatible with the primary involvement in the low back. It also includes the fact that the Plaintiff still drove, had not yet undergone pain management, had quit physical therapy in 2011, and had more recently stopped using Dr. DiGeronimo's practice altogether. (R. 17).

These reasons provided good cause for the ALJ to decline affording Dr. DiGeronimo's opinion substantial or considerable weight and were adequately articulated by the ALJ in his decision.

The Plaintiff's effort to bolster Dr. DiGeronimo's opinion by pointing to other supporting evidence in the record is misplaced. While it may be true that other evidence buttresses Dr. DiGeronimo's conclusions, this fact provides no basis to overturn the ALJ's decision to give Dr. DiGeronimo's opinion limited weight. It is, after all, not the function of the Court to re-weigh the evidence upon review. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Instead, the Court must merely analyze whether the ALJ relied on substantial evidence and applied the proper legal standards. *Id.* After conducting its review, the Court finds that the ALJ has done just that. The ALJ properly considered Dr. DiGeronimo's opinion, the other medical opinions of record, and the rest of the medical evidence. The ALJ also properly predicated his

RFC determination on those opinions that were consistent with the rest of the medical evidence and the Plaintiff's self-reported activities of daily living and testimony. As a result, the Plaintiff's argument with regard to Dr. DiGeronimo is without merit.

Turning to the Plaintiff's challenge to the weight given to Drs. Sachs and Taylor's opinions, the Plaintiff likewise fails to demonstrate any error in this regard. The Plaintiff sole argument with respect to Dr. Sachs is that the ALJ erred in discounting the doctor's opinion because his last treatment of the Plaintiff occurred in 2012 and consisted of an injection, which provided the Plaintiff with complete relief. (Doc. 17 at 24). The Plaintiff asserts that Dr. Sachs's opinion is still relevant despite its remoteness in time, and that the ALJ failed to mention the relief afforded by the injection only lasted four weeks before the pain returned. *Id.*

The ALJ's decision, however, was the result of an Appeal Council's remand, and the ALJ's brief discussion of Dr. Sachs's opinion notes that the Appeals Council did not challenge the ALJ's determination in his prior decision not to give controlling weight to Dr. Sachs's opinion. (R. 19). Moreover, in his prior decision, the ALJ extensively discussed his reasons for discounting Dr. Sachs's opinion, including the fact that Dr. Sachs advised the Plaintiff against further surgery and based his restrictions, at least in part, on the Plaintiff's complaints. (R. 162-66); *see Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 815-17 (11th Cir. 2011) (stating that ALJ did not err in discrediting plaintiff's complaints of disabling pain due to a disc herniation that slightly impinged a nerve root, where there was a pattern of conservative treatment, including treatment with medication, and plaintiff was not a candidate for surgery).

Furthermore, although the ALJ failed to mention in his decision that the relief afforded by the injection lasted only four weeks, he did note in his prior decision that the Plaintiff "complained that the pains returned in a month" following her injection. (R. 160).

With respect to Dr. Taylor, despite the fact that, as a non-treating, examining source, his opinion was not entitled to great weight, *Crawford*, 363 F.3d at 1160 (citing *McSwain*, 814 F.2d at 619), the ALJ nonetheless supported his decision to discount the doctor's opinion by citing discrepancies in his findings, which the ALJ noted "were all amenable to effort and the patient's description" (R. 18-19). These discrepancies provided the ALJ with good cause for not affording Dr. Taylor's opinion substantial weight. *Id*. Whether the Court would find differently upon review of the evidence is of no consequence, as that is not the Court's role. *Miles*, 84 F.3d at 1400. Instead, the Court is limited to deciding whether the ALJ applied the correct legal standards and whether his decision is supported by substantial evidence. *Id.*

Upon review, the Court finds the ALJ has satisfied these requirements, and the Plaintiff has failed to persuasively argue otherwise. The ALJ appropriately considered all of the medical opinions and the other relevant evidence of record. In addition, he afforded great weight to Dr. Gupta's opinion and gave substantial weight to the opinion of the non-examining state agency physician, Girija Padmanabh, M.D., both of which support an RFC for light work. (R. 129, 1302-16). The ALJ properly based his RFC determination on those opinions that were consistent with the rest of the medical evidence as well as both the Plaintiff's testimony and her activities of daily

living. Accordingly, the Plaintiff's arguments regarding the weight given to the treating physicians are without merit.

IV.

For the foregoing reasons, it is hereby ORDERED:

1) The Commissioner's decision is AFFIRMED.

2) The Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

DONE and ORDERED in Tampa, Florida, this 28th day of March 2019.

*Christopher P. Tuite*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record